Jaleel Kevin Stallings,         Case No:     21-CV-02395 (ADM/TNL)

         Plaintiffs,

**ROBERT KROLL'S
MEMORANDUM OF LAW IN
SUPPORT OF HIS MOTION TO
DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO
RULE 12(B)(6)**

v.

Andrew Bittell, et al.

         Defendants.

## INTRODUCTION

The instant case is a claim by a male whose injuries incurred immediately after he fired an assault rifle at a van full of police officers on May 30, 2020 in Minneapolis, Minnesota. Defendant Robert Kroll ("Defendant Kroll") was not in the van, and Plaintiff fails to allege any conduct by Defendant Kroll which would cause liability to Defendant Kroll. As such, Plaintiff's claims against Defendant Kroll must be dismissed.

## FACTS

The Complaint describes events that took place on or about May 30, 2020. While the Complaint makes a number of accusations involving the MPD's response to the largest riot in the State's history, the facts surrounding Mr. Stallings's injuries are undisputed and are what is relevant to his suit.

Mr. Stallings was standing in a parking lot with a group of people in violation of the Governor's and Mayor's curfew orders. ECF Doc No. 1, P. 21, ¶¶ 137, 141, 143,  The Plaintiff was carrying an assault rifle. In response to police officers firing 40mm launchers, Plaintiff raised his assault rifle, and fired a number of 7.62mm assault rifle rounds at MPD Police Officers.  Plaintiff claims that he "fired toward, but not directly at, the van…" *Id*. P. 2, ¶1. Later, Plaintiff claimed, in fear of sustaining life threatening injuries after being shot in the chest, he fired at the ground near the van. *Id.*, p. 24 ¶¶ 157, 162. Plaintiff claims that approximately 20 seconds later, Officers began striking Plaintiff.

Defendant Kroll is the President of the Police Officers' Federation of Minneapolis ("POFM"), the Exclusive Representative of all licensed police officers employed by the City of Minneapolis between the ranks of Police Officer and Lieutenant.  The POFM is a private non-profit corporation[1]. As President of the POFM, Defendant Kroll was contractually "relieved from [his] regularly scheduled duties to engage in Federation activities…" and was designated to "work exclusively on Federation business on a permanent basis (the "Full-Time Personnel")…"[2]  The City of Minneapolis and its Police Department "shall not order Full-Time Personnel to perform duties for the Police Department…" Id at 58. POFM directs the "activities of personnel while such personnel are engaged in Federation business…" Id.  Thus, the City of Minneapolis and the

---

[1] *See* Minnesota Secretary of State Business Filing, https://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=b41c90d8-bad4-e011-a886-001ec94ffe7f, (last visited December 28, 2021)
[2] *See Labor Agreement*, p. 57, available at https://www2.minneapolismn.gov/media/content-assets/www2-documents/departments/wcmsp-200131.pdf (last visited December 28, 2021)

Minneapolis Police Department were prohibited from requiring Defendant Kroll to perform law enforcement duties for the MPD with only a few exceptions[3]. *Id*. Defendant Kroll held the rank of Lieutenant from the Minneapolis Police Department, but was designated as Full-Time personnel where he worked exclusively for POFM and was Full-Time for POFM from 2014 through the date of his retirement. Defendant Kroll became President of POFM through election by the POFM membership, not through any act by the City of Minneapolis.

On the date of Plaintiff's alleged injuries, Defendant Kroll was designated as Full-Time Personnel of the POFM, working exclusively on POFM business. As a Full-Time Personnel of the POFM, Defendant Kroll supervised and directed other POFM personnel engaged in Federation business and held no supervisory role or responsibility within the Minneapolis Police Department.

Plaintiff's sole allegation to support its claim against Defendant Kroll is an email Defendant Kroll sent to the members of the POFM *after* Plaintiff sustained his injuries. The Complaint alleges Plaintiff was injured on May 30, 2020. Defendant Kroll's statement was issued on June 1, 2020, one day *after* Plaintiff's alleged injury had already occurred. Defendant Kroll was not present nor was he supervising any Minneapolis Police Department personnel at the time of Plaintiff's alleged injury.

---

[3] "[T]raining required for such Full-Time Personnel to retain their POST license and/or good standing as employees of the Minneapolis Police Department; being interviewed under Garrity by Internal Affairs; or required participation in criminal or civil litigation relating to duties performed by the employee as a Minneapolis Police officer (collectively the "Mandatory MPD Duties")."

Plaintiff's sole claim against Defendant Kroll is Count 5, Conspiracy to Interfere with Assertion of Constitutional Rights. *Id.*, p. 67. The Complaint contains no *factual* allegations regarding Count 5 as to Mr. Kroll. Rather, Count 5 contains mere legal conclusions.

## ISSUES

1. Whether the Complaint should be dismissed for failure to state a claim upon which relief can be granted?

## STANDARD OF REVIEW

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court generally must ignore materials outside the pleadings, but it may consider materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011). Accordingly, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment under Rule 12(d). *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

The Court must grant a Rule 12(b)(6) motion to dismiss for failure to state a claim if the plaintiff "cannot prove any set of facts in support of the claim which would entitle him to relief." *Stone Motor Co. v. General Motors Corp.*, 293 F.3d 456, 464 (8th Cir. 2002). The Supreme Court has emphasized that even under the liberal pleading standard of Rule 8, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain *facts* with enough specificity "to raise a right to relief above the speculative level." *Iqbal*, 129 S. Ct. at 1964-65. "The threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555). Accordingly, a plaintiff must provide more than labels and conclusions.

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. (citing Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Courts ordinarily do not consider matters outside the pleadings on a motion to dismiss. See Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir.1992)(quotations omitted). "[F]acts asserted in the memoranda [supporting a motion to dismiss] themselves, as well as statements made at oral argument, may not be considered unless they were first asserted in the pleadings." *Folger v. City of Minneapolis*, 43 F.Supp.3d 922, 930 (D.Minn.2014).

A court may, however, consider exhibits attached to the complaint, documents that are necessarily embraced by the pleadings, and public records. *Little Gem Life Scis., LLC v. Orphan Med., Inc*., 537 F.3d 913, 916 (8th Cir.2008). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.' " *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir.2012) (quoting *Kushner v. Beverly Enters., Inc*., 317 F.3d 820, 831 (8th Cir.2003)). For instance, the contract upon which a claim rests is necessarily embraced by the pleadings and may be considered. *Gorog v. Best Buy Co*., 760 F.3d 787, 791 (8th Cir.2014). POFM Labor Agreement and the POFM are referenced in specific paragraphs of the complaint and incorporated by the complaint and the Court should, therefore, consider them.

**ARGUMENT**

The Complaint should be dismissed because the Complaint does not plead contain *facts* with enough specificity "to raise a right to relief above the speculative level." *Iqbal*, 129 S. Ct. at 1964-65. Instead, the complaint contains "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555). Because the Complaint contains nothing more than conclusory statements, it does not plead facts with enough specificity and must be dismissed.

Plaintiff cannot prove any set of facts in support of the claim which would entitle him to relief. Plaintiff alleges that he was injured by police officers who used excessive force on Plaintiff. There is no allegation that Defendant Kroll used any force on Plaintiff, there is no allegation that Defendant Kroll directed MPD officers to use force on Plaintiff. In fact, there is no allegation that Defendant Kroll was even on duty as a police officer or present at the time of the alleged injuries. There is no allegation that Defendant Kroll had contact with any Defendants prior to the day after Plaintiff sustained his alleged injuries. The Complaint proves there was not even *an opportunity* to conspire because the use of force was in immediate response to Plaintiff's actions. *See* ECF Doc. No. 1 ¶¶ 157-176. After Plaintiff fired multiple rounds from his assault rifle at Police Officers, the Complaint alleges that Police Officers immediately stopped, dismounted the van, rapidly approached Plaintiff, and used force on Plaintiff. *Id.* There was no opportunity for

Defendant Kroll to request other Defendants to do any act to Plaintiff. Therefore, no civil conspiracy was even possible.

The facts alleged in the Complaint do not allow the court to even infer more than the mere possibility of misconduct let alone the requirement that "the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss, the pleading standard in Rule 8 requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id* 1949 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs' Complaint in this case fails to even meet the unacceptable "unadorned, the defendant-unlawfully-harmed-me accusation." The Complaint should be dismissed because it does not contain "enough facts to state a claim to relief that is plausible on its face."

Even assuming *arguendo* that Plaintiff meets the Rule 8 threshold to survive a motion to dismiss, the allegations against Defendant Kroll fall squarely within the constitutional protections of the First Amendment. Plaintiff asks this Court to create a cause of action under 42 U.S.C. §1983 that creates financial liability for the content of protected speech. "When a law burdens such speech, the Court applies 'exacting scrutiny,' upholding the restriction only if it is narrowly tailored to serve an overriding state interest." *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 334-335 (1995) citing *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 786 (1978). The United States Congress never intended to allow 42 U.S.C. §1983 as a sword to slaughter the First Amendment. U.S.C.A. Const.Amend. 1. Plaintiff's twisting of 42 U.S.C. §1983 cannot

meet any level of scrutiny, let alone the exacting scrutiny required in this content-based claim. The Complaint against Defendant Kroll should be dismissed.

## I. PLAINTIFF HAS FAILED TO ALLEGE A PLAUSIBLE CLAIM FOR RELIEF AGAINST DEFENDANT KROLL.

Plaintiff's claims against Defendant Kroll are based entirely upon the actions of others. Defendant Kroll cannot be held liable for the actions of others, especially those that he does not directly supervise.

Defendant Kroll, as the President of the POFM, was not acting under color of state law. Defendant Kroll's speech, as President of the POFM, is afforded the highest rung of First Amendment protection for the content of his speech. Because Defendant Kroll (i) was not present when Plaintiff allegedly sustained injuries; (ii) was not supervising Minneapolis Police Department Police Officers at the time of Plaintiff's alleged injury; and (iii) is not even alleged to have had contact with Officers who had contact with Plaintiff, the motion to dismiss should be granted.

### A. Defendant Kroll is not liable pursuant to 42 U.S.C. §1983 because he was not acting under color of law.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42 (1988). "[A] public employee acts under color of law when he '[e]xercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Johnson v. Phillips,* 664 F.3d 232,

239–40 (8th Cir.2011) (quoting *West,* 487 U.S. at 49, 108 S.Ct. 2250). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Roe v. Humke,* 128 F.3d 1213, 1215 (8th Cir.1997) (internal quotation marks omitted). Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law. *See Polk County v. Dodson,* 454 U.S. 312, 319–20 (1981).

A defendant is acting under color of state law if he "acts or purports to act in the performance of official duties, even if he oversteps his authority and misuses power." *Johnson,* 664 F.3d at 240. But "[a]cts of officers in the ambit of their personal pursuits are plainly excluded" from the scope of § 1983 liability. *Dossett,* 399 F.3d at 949 (8th Cir.2005) (alteration in original) (quoting *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)).

To determine whether an official is acting under color of law, the Court "look[s] to see whether a sufficient nexus exists between the official's public position and the official's harmful conduct." *Ramirez–Peyro v. Holder,* 574 F.3d 893, 900 (8th Cir.2009). "Absent any actual or purported relationship between the officer's conduct and his duties as a police officer, the officer cannot be acting under color of state law." *Roe,* 128 F.3d at 1216. "In determining whether a sufficient nexus exists in the context of a § 1983 claim brought against a police officer, the Court considers a number of factors, including

whether the officer was on duty and in uniform, the motivation for the officer's actions, whether the officer had access to the plaintiff because of the officer's position, and whether the officer invoked his status or threatened to use his official authority in the future. *Magee v. Trusttees of Hamline University, Minn., et al.* 957 F.Supp. 2d 1047, 1055 (D. Minn. 2013) citing *Ramirez–Peyro,* 574 F.3d at 901. When acting in the capacity as a Union President, an employee is *not* acting under color of law and is, therefore, not liable pursuant to §1983. *See Kern v, City of Rochester*, 93 F.3d 38 (2nd Cir. 1996) (Despite Fire Union President receiving full-time pay and benefits from City while acting as Union President is not a state actor because the position of Union President was not by virtue of any action by the City.)

Applying these factors, this Court dismissed a similar suit against Dave Titus, then the President of the St. Paul Police Federation and a St. Paul Police Officer, *Magee,* 957 F.Supp. 2d 1047. The plaintiff in *Magee* alleged that Titus violated her rights when he published a written response to an editorial written by the plaintiff. *Magee*, 957 F.Supp. 2d 1047. In his response, Titus identified himself as a St. Paul Police Officer and the President of the St. Paul Police Federation, questioned Magee's "fitness to teach" and stated "I hope Professor Magee confines her race baiting and cop-hating to her newspaper submissions and keeps it out of the classroom." *Id.* Titus then contacted Magee's employer, Hamline University, allegedly with the intent to have Magee fired in retaliation for her critical editorial, and organized a boycott of Hamline University to encourage Hamline to fire Magee. *Id.*

This Court found that those facts were insufficient to show that Titus was acting under color of state law because Titus was not using his position as a police officer to influence others, rather he was using his position as St. Paul Police Federation President. *Id.* "Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." *Id* at 1056, quoting *Ottman v. City of Independence, Mo.,* 341 F.3d 751, 762 (8th Cir.2003).

The 8th Circuit Court of Appeals affirmed the dismissal. *Magee v. Trustees of Hamline University, Minn. et al.*, 747 F.3d 532 (8th Cir. 2014). Specifically, the 8th Circuit held that Titus "was not acting 'under color of state law' when he published [the] editorial" and that the "federation's call for police department to boycott university did not constitute joint activity with state." *Id.*

Like Titus, the facts alleged in the Complaint prove that Defendant Kroll was not acting under color of state law when he sent an email to POFM membership because he was acting as President of POFM. As previously noted, Defendant Kroll worked full time as the President of the Police Officers Federation of Minneapolis and did not perform law enforcement duties. See Kelly Aff. Ex. 1, p. 57. Like Titus, Defendant Kroll was not using his position as a police officer—he was not on duty, not in uniform, and had no contact with any of the plaintiffs—rather all of his conduct was in the scope of his position as President of the POFM. Like *Magee*,

The POFM is a private party. *See Magee v. Trustees of Hamline University, Minn., et al* 747 F.3d 532 (8th Cir. 2014). Labor unions are generally not state actors. *See*

*Montgomery v. City of Ardmore* 365 F.3d 926 (10th Cir. 2004). As President of the POFM, a private nonprofit corporation, Defendant Kroll acts as a private party. The complaint makes it clear that all of Defendant Kroll's actions were in the scope of his position as the President of POFM and not that of a police officer. There are no allegations in the Complaint establishing even an inference of a nexus between Defendant Kroll's official conduct as a police officer acting under color of law and plaintiff's injuries. "[A] clear nexus must exist between the defendant's official conduct and the violation of the plaintiff's rights." *Ottoman*, 347 F.3d at 761-62. Defendant Kroll's actions were not "made possible by, or undertaken in, his position as a police officer. *Magee* 957 F.Supp.2d at 1057." Instead, Defendant Kroll's actions were made possible and undertaken in his position as President of POFM. Because Defendant Kroll did not act under color of state law, he is not liable under 42 U.S.C. § 1983 and the complaint should be dismissed.

### B. Defendant Kroll did not conspire to violate Plaintiff's rights

Plaintiff alleges one claim against Defendant Kroll – *Civil Conspiracy*. Complaint p. 67. To prove a § 1983 conspiracy claim, Plaintiff must show "that the defendant conspired with others to deprive ... her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd,* 191 F.3d 953, 957 (8th Cir.1999). To maintain a § 1983 conspiracy action against Defendant Kroll as a private individual, Plaintiff must prove that Kroll willfully participated with and reached a mutual

understanding with state officials concerning the unlawful objective of the conspiracy. *Lawrence v. City of St. Paul*, 740 F.Supp2d 1026 (D. Minn. 2010); *citing White v. McKinley,* 519 F.3d 806, 816 (8th Cir. 2008) (citing *DuBose v. Kelly,* 187 F.3d 999, 1003 (8th Cir.1999)). Plaintiff's complaint, citing nothing beyond legal conclusory statements, does not, and cannot, allege that Defendant Kroll entered into a mutual understanding with government officials to deprive this specific plaintiff of his constitutional rights.

A conspiracy claim under § 1983 "requires allegations of *specific facts* tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene,* 595 F.3d 868, 870 (8th Cir.2010) (emphasis added) (quoting *Kearse v. Moffett,* 311 F.3d 891, 892 (8th Cir.2002)). Here, Plaintiff has not alleged any facts, let alone specific facts, to support a claim that Defendant Kroll requested anyone to do any act to Plaintiff. Therefore, Defendant Kroll's motion to dismiss should be granted.

Plaintiff rests upon summary legal conclusions in his civil conspiracy claim in a desperate attempt to justify frivolously naming Defendant Kroll in the Complaint. Plaintiff argues that Defendant Kroll conspired with the City to violate his civil rights. However, a private actor only acts under color of state law when the private actor "is a willful participant in joint activity with the State or its agents." *Id citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A plaintiff alleging a conspiracy must allege facts that would permit a reasonable jury to find that the two reached an agreement to violate the plaintiff's constitutional rights. Plaintiff does

not allege any facts that, if proven, would permit a reasonable jury to find a civil conspiracy. Instead, Plaintiff relies exclusively upon conclusory allegations generally averring the elements of a civil conspiracy.

As a matter of law, "conclusory allegations are insufficient to state a § 1983 claim." *Id*. There are no *factual* allegations suggesting that Defendant Kroll conspired with the City or its Police Officers. This Court addressed this very issue when it denied plaintiff's motion to amend her complaint to add a claim of civil conspiracy in *Magee*. Like the allegations against Defendant Kroll here, the plaintiff in *Magee* "allege[d] generally that Titus was able to influence police policy through his position as an officer and president of the SPPF." 957 F. Supp. at 1057. Magee alleged that Titus acted in conspiracy with the Saint Paul Police Department "SPPD, with a meeting of the minds, to deprive her of constitutionally-guaranteed rights—in particular, that Titus's letter to the editor identified himself as president of the SPPF and that Titus, through the SPPF, declared a boycott against Hamline until it took punitive action against Magee; that the SPPF's boycott resolution urged the SPPD to join the boycott against Hamline and that "[u]pon information and belief Titus was successful in obtaining assistance from police officers or the SPPD to boycott Hamline." *Id.* at 1071.

The court denied Magee's motion to amend her complaint to add this allegation, finding that "Magee has not alleged **facts** supporting a conspiracy or meeting of the minds between the SPPF and any public actors. The Proposed Amended Complaint contains *no factual allegations of a mutual understanding between the SPPF and the*

*police department* concerning an unlawful objective to violate Magee's constitutional rights." *Id.* (*citing White v. McKinley,* 519 F.3d 806, 816 (8th Cir. 2008) (emphasis added). *Magee* held that the allegation that the SPPF boycott was "effectuated by numerous public police officers" was insufficient to render her claim against the SPPF plausible because it failed to "acknowledge the distinction between police officers acting in their official capacity and in their personal lives." *Id.* (*citing Lawrence v. City of St. Paul,* 740 F.Supp.2d 1026, 1046 (D. Minn. 2010). Last, *Magee* held that plaintiff's "assertion that Titus acted with sufficient nexus to his police officer status to act under color of law is a conclusory allegation of law that is not entitled to an assumption of truth." *Id.* (citing *Delgado–O'Neil v. City of Minneapolis,* No. 08–4924, 2010 WL 330322 (D.Minn. Jan. 20, 2010) *aff'd,* 435 Fed.Appx. 582 (8th Cir. 2011)). "Because the SPPF is a private entity not liable under 42 U.S.C. § 1983 and Magee has not alleged facts supporting her conclusory allegation that defendants acted under "color of law" or that the SPPF acted in concert with public officials, Magee's proposed Section 1983 claim against the SPPF could not survive a Rule 12(b)(6) motion to dismiss." *Id.*

Like the plaintiff in *Magee*, Plaintiff has failed to allege *facts* that Defendant Kroll "acted in concert" with the City of Minneapolis or any officer. The general allegation that Defendant Kroll "influenced' Department policy" is inadequate as a matter of law. The sole alleged contact between Defendant Kroll and the other alleged co-conspirators, was an email *after* Plaintiff's alleged injuries. Even if the contact was prior to Plaintiff's alleged injuries, there is no allegation that Defendant Kroll requested any act nor any

allegation that the other alleged co-conspirators reached any mutual agreement. *Id* at 537 quoting *Mershon v. Beasley,* 994 F.2d 449 (8th Cir. 1993) ("contacts, by themselves and without more" do not allow the inference of "any mutual understanding" in a § 1983 action).

Plaintiff fails to provide evidence or allegation of "a meeting of the minds where both the Department [or its police officers] and [Kroll] jointly agreed to violate [Plaintiff's] constitutional rights." *Magee* 957 F.Supp.2d at 1058. Like *Magee*, Plaintiff's complaint contains only vague and general legal conclusions that Defendant Kroll conspired to violate Plaintiff's rights, and cannot overcome a motion to dismiss. *Id.* citing *Farm Credit Servs. of Am. v. Am. State Bank,* 339 F.3d 764, 767 (8th Cir.2003) (holding that courts are "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"); *Kurtz v. City of Shrewsbury,* 245 F.3d 753, 758 (8th Cir. 2001) ("Other than the appellant's bare allegations, the record is devoid of any evidence substantiating a claim of conspiracy"). Put simply, the complaint contains no facts to support Plaintiff's claim of civil conspiracy against Defendant Kroll. "[W]ithout additional facts, [Plaintiff] has not "'nudged [his] claims' of retaliation 'across the line from conceivable to plausible.'" *Magee* 957 F.Supp.2d at 1058, quoting *Iqbal,* 556 U.S. at 680, 129 S.Ct. 1937, *quoting Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

The facts, as alleged, prove that there was no opportunity to conspire between police officers and Kroll. See Complaint ¶¶162-183. Therefore, the motion to dismiss should be granted.

### C.  Defendant Kroll was not present nor supervising any Minneapolis Police Officers at the time of Plaintiff's alleged injuries

As a threshold matter, Plaintiff does not and cannot plead that Defendant Kroll inflicted harm upon Plaintiff because he was neither present nor working as a Police Officer at the time of Plaintiff's alleged injuries. Because there is no allegation that Defendant Kroll used force against Plaintiffs and because he was not working as an MPD Lieutenant at the time of Plaintiffs' alleged injuries, Plaintiffs cannot plead any facts that Defendant Kroll was supervising employees in the discharge of official duties. The Supreme Court has ruled that defendants "cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic." *Iqbal*, 556 U.S. 662 (2009).

Likewise, Plaintiff cannot plead any facts that Defendant Kroll was supervising employees in the discharge of official duties because he was not working as an MPD Lieutenant at the time of Plaintiff's alleged injuries. As a matter of law, Defendant Kroll cannot be liable for the conduct of a subordinate because "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Id.* at 676 (internal citation omitted). "A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly

employed by or under him, in the discharge of his official duties" *Id.*, quoting *Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888).

1. *No facts have been plead or can be plead to create liability against Defendant Kroll.*

Defendant Kroll is not alleged to have done anything beyond performing his duties as the President of the POFM. None of his alleged actions included an explicit or even implicit call for violence against any one or any entity. The remainder of the allegations are towards other Defendants and Municipal Defendants. There are no facts pled nor any facts that can be pled to show that Defendant Kroll engaged in any act towards Plaintiff which creates § 1983 liability to Defendant Kroll. Plaintiff's claims against Defendant Kroll do not go beyond mere averments or conclusory statements. Defendant Kroll, in a one-way exercise of free speech, does not a civil conspiracy make. The Complaint fails to allege any facts that support any claim against Defendant Kroll and it should be dismissed.

Defendant Kroll was not present nor was he supervising anyone who was present at the time of Plaintiff's alleged injuries. Because Plaintiff cannot prove any facts that Defendant Kroll caused Plaintiff's injuries, the claim against him must be dismissed,

## II. Defendant Kroll's speech is protected by the First Amendment of the United States Constitution

"The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled" by the Supreme Court. *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) quoting *Roth v. United States*, 354 U.S.

476, 484 (1957). This constitutional safeguard, "'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) quoting *Roth v. United States*, 354 U.S. 476, 484 (1957). The Supreme Court has expressly held that "debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. *Id* at 270-271 citing *Terminiello v. Chicago*, 337 U.S. 1 (1949) and *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937).

As the President of the POFM, Defendant Kroll was an outspoken advocate for the union and its members. The letter referenced in the Complaint was sent by Defendant Kroll, as POFM President directly to POFM members. ECF Doc. No. 1, ¶385. The letter speaks for itself. Unlike Titus, who advocated for SPPD police officers to boycott Hamline University, Defendant Kroll did not advocate for officers to harm protesters or members of the media. Defendant Kroll simply voiced his support for POFM members in the face of ongoing protests and riots following the death of George Floyd—clearly a matter of significant public concern.

As a private citizen and elected President of a Union, Defendant Kroll's speech is highly protected by the First Amendment of the United States Constitution. Speech on matters of public concern is at the heart of the First Amendment's protection. *Snyder v. Phelps*, 562 U.S. 443 (2011). Unions can also speak out on controversial subjects including "climate change, the Confederacy, sexual orientation and gender identity,

evolution, and minority religions." *Janus*, 138 S.Ct. at 2466. "These are sensitive political topics, and they are undoubtedly matters of profound 'value and concern to the public.' *Id.* quoting *Snyder,* 562 U.S. at 453. When Unions engage in such speech, it "occupies the *highest rung of the hierarchy of First Amendment values*" and merits "*special protection*." *Janus* 138 S.Ct. 2448 quoting *Snyder*, 562 U.S. 443, 452 (2011) (emphasis added).

Here, like *Janus*, "the union speech at issue in this case is overwhelmingly of substantial public concern." 138 S.Ct. at 2447. Likewise, Defendant Kroll's commentary about the hard work that the members of POFM engaged in, which went unrecognized by elected officials in the City of Minneapolis, was, and is, of substantial public concern. Additionally, Defendant Kroll's protected speech referenced in paragraph 41 of the complaint regarded Police Officer use of force incidents and the rise in Police Officers' Post Traumatic Stress Disorder diagnoses in general. Both use of force and PTSD are of substantial public concern.

As Defendant Kroll's speech was not on behalf of the City of Minneapolis or the Minneapolis Police Department. "[I]f the union's speech is really the employer's speech, then the employer could dictate what the union says. Unions, we trust, would be appalled by such a suggestion." *Janus v. American Federation of State, County, and Mun. Employees, Council 31* 138 S.Ct. 2448, 2475 (2018).

Plaintiff does not allege nor can he reasonably allege that Defendant Kroll's speech falls within one of the extremely narrow exceptions to First Amendment

protection such as defamation or incitement to violence. To summarize Plaintiff's claim against Defendant Kroll: he doesn't like him or what he says. Disliking an individual does not create a valid cause of action. The First Amendment was enacted to expressly protect an individual's speech and is designed to preclude lawsuits such as this one. The constitutional protection does not turn upon 'the truth, popularity, or social utility of the ideas and beliefs which are offered.' *N.A.A.C.P. v. Button*, 371 U.S. 415, 445 (1963). The speech in which Defendant Kroll engaged in, "the advocacy of a politically controversial viewpoint-is the essence of First Amendment expression." *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 347 (1995) citing *International Soc. for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, (1992); *Lovell v. City of Griffin,* 303 U.S. 444, (1938). Like *McIntyre*, the speech took place during a time with controversial actions by rioters in response to actions of POFM's members which "only strengthens the protection afforded to [Defendant Kroll's] expression: Urgent, important, and effective speech can be no less protected than impotent speech, lest the right to speak be relegated to those instances when it is least needed." *Id* citing *Terminiello v. Chicago,* 337 U.S. 1, 4, (1949).

The Supreme Court has rejected similar lawsuits. Plaintiff asks this Court to create "a form of regulation that creates hazards to protected freedoms markedly greater than those that attend reliance upon the criminal law." *New York Times*, 376 U.S. at 278, quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). "The fear of damage awards under a rule such as that invoked by the [Plaintiff] here may be markedly more

inhibiting than the fear of prosecution under a criminal statute." *New York Times,* 376 U.S. at 277 citing *City of Chicago v. Tribune Co.,* 139 N.E. 86, 90 (Ill. 1923).

To allow this case to move forward would have a significant chilling effect on Unions' and its elected union officials to engage in speech on matters of public concern. It would decimate the protections of the First Amendment and create a deluge in litigation based solely on the content of a Defendant's speech. Plaintiff has not cited to any Court that has interpreted 42 U.S.C. §1983 to create liability based upon the content of a Defendant's speech. Such a claim turns the First Amendment upon its head.

The case against Defendant Kroll should be dismissed.

## CONCLUSION

Plaintiff's claims against Defendant Kroll do not withstand any level of scrutiny. In order to survive, Plaintiff must prove that 42 U.S.C. §1983 creates a content-based restriction that will somehow survive an exacting scrutiny analysis. However, the Supreme Court has recognized Union speech on matters of public concern receive the highest level of protection. *Janus* 138 S.Ct. 2448 quoting *Snyder*, 562 U.S. 443, 452 (2011).

Plaintiff's allegation against Defendant Kroll is based upon his dislike of, or disagreement with, the content of his speech. To allow such a claim to go forward would destroy the fundamental protections of the First Amendment. The Complaint does not allege that Defendant Kroll was present at the time of Plaintiff's alleged injury nor that he held any role in law enforcement at the time of Plaintiff's alleged injury. Because

Plaintiff's claims against Defendant Kroll lack any factual basis, they should be dismissed.

Dated: December 28, 2021

**KELLY & LEMMONS, P.A.**

/s/ Joseph A. Kelly
Joseph A. Kelly (#389356)
jkelly@kellyandlemmons.com
Kevin M. Beck (#389072)
Rebecca L. Duren (#393624)
2350 Wycliff Street, #200
St. Paul, MN 55114
(651) 224-3781
F: (651) 223-8019

*Attorneys for Defendant Minneapolis*
*Police Lieutenant Robert Kroll*